## APPEAL OF STRAND AMUSEMENT CO.

Docket No. 648.    Submitted July 11, 1925.    Decided February 17, 1926

1. On the evidence, *held*, that a lease of certain property to the taxpayer did not have a cash value which can be included in invested capital.

2. The sale price of certain assets determined.

3. The cost of a theatre erected by the taxpayer on leased premises should be amortized over the term of the original lease.

*Charles H. English* and *Charles P. Swope, Esqs.*, for the taxpayer.

*A. R. Marrs, Esq.*, for the Commissioner.

### Before IVINS and MORRIS.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1917 to 1920, inclusive, in an amount in excess of $10,000. The questions raised are: (1) The extent to which a certain leasehold interest should be included in invested capital; (2) the sale price of certain assets sold by the taxpayer in 1920; and (3) the period over which the cost of a theatre should be amortized.

## FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation, with its principal office in Erie.

By an indenture of lease dated September 24, 1914, Leo Wertheimer leased from the owner, Lydia G. Selden, certain premises in the City of Erie, Pa., known as the Selden property, for a term of 10 years, with options to renew. The premises covered land 42 feet by 142 feet, and an old brick house known as 918, 918½, and 920½ State Street, having an assessed valuation of, land, $84,000; building, $3,650; total, $87,650. The land in the rear of the building was not producing anything. The largest part of the Selden property was vacant, not producing anything. The lease of September 24, 1914, provided for a total rental for the stipulated 10-year period of $81,000, or $8,100 per year. The old brick house that stood on the front of the property was divided into three little stores, which were producing rents aggregating $6,920 per year.

By an indenture of lease dated November 11, 1914, and a supplement thereto dated February, 1915, Wertheimer leased from Alexander J. Jarecki and Fred C. Jarecki, as executors of the estate of Charles Jarecki, deceased, and Albert H. Jarecki, as executor of the estate of Henry Jarecki, deceased, certain adjoining premises, known as 922 State Street, for a term of 10 years, with options to renew for two succeeding terms of five years each. The leased premises covered land 20 feet 4 inches by 147 feet and a building having an assessed valuation of, land, $40,666; building, $3,900; total, $44,566. The rent of the Jarecki property prior to the lease to Wertheimer was $3,000 per year; the rent fixed in the lease to Wertheimer for the stipulated 10-year period was $40,000, or $4,000 per year.

The combined rental for the Jarecki and Selden properties fixed in the respective leases to Wertheimer was $12,100 each year. The area covered by said leases was 62 feet 4 inches by 142 feet to 147 feet.

By lease dated April 1, 1915, Wertheimer sublet to the Strand Amusement Co., the taxpayer herein, a portion of the assembled properties covered by the particular leases above described, to wit:

The entire ground floor full depth of the property known as 922 State Street, having a frontage on State Street of twenty (20) feet four (4) inches and a depth of one hundred forty-seven (147) feet to an alley, and (subject to the provision for substitution hereinafter contained) the entire third floor of the building known as 918, 918½, and 920½ State Street, and also all the property in the rear, extending from the third story building on said property to an alley, and having a uniform width of forty-two (42) feet, as shown on theatre plan made by G. Morton Wolfe for party of the second part.

The term of said sublease was from April 1, 1915, to April 1, 1925; the premises were "to be used and occupied as a theatre and for no other purpose;" the rental fixed for said period was $83,-979.17, or $8,500 per year from and after June, 1915, plus all increases in taxes levied against the properities during the term, all electric light, gas, and water rents, etc. The sixteenth paragraph of said sublease provides that the Strand Amusement Co. "will erect a theatre building upon the said premises" and complete same prior to January 1, 1916, giving bonds to the respective owners of the property. The seventeenth paragraph of said sublease provides for a conditional option to renew for an additional term of 10 years at an adjusted rental, depending upon whether Wertheimer exercised the options to renew contained in the individual leases to him.

In the sublease to the taxpayer Wertheimer retained the largest part of the revenue-producing portion of his two leases, namely, the first and second floors of the Selden property, comprising the three small stores, which were renting for an aggregate annual rental of $6,920. He likewise reserved all of the Jarecki building above the ground floor.

Property in the City of Erie was assessed in 1915 at about two-thirds of its value.

There were no known sales of leases of State Street property in the City of Erie in 1915, or about that time. There was an outright sale in 1915 of property on the northeast corner of Tenth and State Streets, which is across the street from the Strand location. That sale involved a corner lot, 24 feet by 100 feet, and the purchase price was $50,000, or about $2,080 per front foot.

Around the corner from the Strand Theatre was situated the Perry Theatre, which is a larger building than the Strand, and which rented in 1915 at an annual rental of $9,000. The land occupied by the Perry Theatre, 85 feet by 165 feet, was assessed in 1915 at $54,400, while the land a portion of which the Strand Theatre occupied was assessed at $124,666. The building occupied by the Perry Theatre was assessed at $35,000, making a total assessed valuation of the Perry property of $89,400. The buildings on the Selden and Jarecki properties were assessed at $7,550, making a total assessed valuation of said properties of $132,216.

The Strand Amusement Co. was organized August 3, 1915, with a capital stock of $150,000, divided into $50,000 par value of preferred stock and $100,000 par value common stock. The common stock was issued to Wertheimer for the assignment of the lease. He turned over $37,500 to one Hayes, retained a like amount himself, and gave the balance, in amounts agreed upon, to the purchasers of pre-

ferred stock as a bonus.   Hayes and Wertheimer purchased $5,000 of preferred stock each.

The construction of the theatre was commenced about August 1, 1915, and was completed about November 1, 1915.

On September 12, 1919, certain stockholders of the Strand Amusement Co. signed a power of attorney authorizing Charles H. English, as attorney in fact, " to sell the capital stock of said company, whether common or preferred, which we own, on the basis of the offer to purchase said stock for one hundred sixty thousand ($160,000) dollars, * * *." No sale was consummated as the result of this offer, and in 1920 further negotiations were entered into looking to the sale of the theatre.

On February 7, 1920, a memorandum of agreement was entered into between the Strand Amusement Co., hereinafter called the vendor, and James B. Clark, of Pittsburgh, Pa., party of the second part, hereinafter called the vendee.   The provisions of said contract pertinent to this appeal are :

FIRST: That the Vendor agrees for the consideration hereinafter stated to assign to the Vendee the existing lease to the Strand Amusement Company for the premises at No. 918 State Street in the City of Erie, Erie County, Pennsylvania, together with the good will, theatre building, equipment and all other property now belonging to the Strand Amusement Company in the City of Erie, aforesaid, except the following :

(a) All cash in bank or on hand as of March 1st, 1920.

(b) All books of accounts and records.

(c) All deposits on film contracts and three shares of stock of the United Theatre Company of America, as hereinafter referred to.

It being understood that on or before March 1st, 1920, as hereinafter provided, the Vendee will pay to the Vendor in addition to the consideration herein fixed, the sum of SEVEN HUNDRED FIFTY ($750) DOLLARS for the assignment of the franchise and three shares of stock issued by the United Theatre Company of America, and that the Vendee will further pay to the Vendor, in addition to the consideration herein mentioned, the full amount of deposits made to secure film contracts and that the Vendee will assume and agree to carry out all of the terms and conditions of said contracts.   The Vendor shall not from the date of this agreement to March 1st, 1920, make any further contracts for films except such as may be necessary for the requirements of the theatre prior to March 15, 1920.

It is further agreed that the theatre, through its officers, shall secure the certificates now outstanding for the entire capital stock of said company and cause the same to be assigned to the Vendee and the Vendee shall thereupon assign said stock to the Vendor for such disposition thereof as said Vendor may determine.

SECOND. That the consideration which the said Vendee is to pay the Vendor is the sum of One Hundred Sixty Thousand ($160,000) Dollars and is to be paid as follows :

Five Thousand ($5,000) Dollars cash in hand on the signing of this agreement by the Vendor as a hand payment and as evidence of good faith, which sum is to be forfeited in case of the failure of the

Vendee to carry out this agreement and which is to be returned in case of failure to perform on the part of the Vendor to this agreement; Fifty-five Thousand ($55,000) Dollars to be paid on March 1st, 1920, on the turning over by the Vendor to the Vendee of the premises aforementioned; for the remaining One Hundred Thousand ($100,000) Dollars the Vendor is to accept from the Vendee six negotiable notes each in the sum of Sixteen Thousand Six Hundred Sixty-six and Sixty-six Hundredths ($16,666.66) Dollars, payable with six per cent interest thereon as follows:

One note payable September 1st, 1920.
One note payable March 1st, 1921.
One note payable September 1st, 1921.
One note payable March 1st, 1922.
One note payable September 1st, 1922.
One note payable March 1st, 1923.

Interest at six per cent to be payable every six months on all unpaid notes. It is understood that the sum of Sixty-one Thousand Nine Hundred Eighteen and Sixty-eight Hundredths ($61,918.68) Dollars, being the book value of the theatre building and equipment shall be the consideration for the assignment of said lease and of said theatre building and equipment, and the residue of the consideration, to-wit, Ninety-eight Thousand Eighty-one and Thirty-two Hundredths ($98,081.32) Dollars shall be the consideration for the good will and established trade of the Strand Theatre owned and operated by the Strand Amusement Company, and as represented by the capital stock of the Strand Amusement Company purchased by James B. Clark and assigned by him to the Strand Amusement Company for retirement in the liquidation of said company; that said sum of Ninety-eight Thousand Eighty-one and Thirty-two Hundredths ($98,081.32) Dollars shall be paid to the Vendor as agent for its stockholders and distributed among said stockholders from the proceeds of said notes.

### DECISION.

The deficiency should be determined in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

### OPINION.

MORRIS: The first contention made by the taxpayer is that it issued $100,000 par value common stock to Wertheimer for the lease which it secured from him, and that such lease had a value of at least $75,000, which amount should be included in its invested capital. It is admitted in the answer that common stock of a par value of $100,000 was issued to Wertheimer for assignment of the lease. Section 326 (a) (2) of the Revenue Act of 1918 provides that the actual cash value of tangible property *bona fide* paid in for stock shall be included in invested capital. It therefore becomes necessary to determine whether this lease had any such value. On the testimony of the taxpayer's own witnesses, we are unable to agree that the lease had a value of at least $75,000. Property was

assessed in the City of Erie in 1915 at about two-thirds of its value, and it was testified that " real estate men all over the country have agreed that 6 per cent " is a fair return on real property. The combined assessed valuations of the Selden and Jarecki properties in 1915 was $132,216. If the assessed valuation was two-thirds of the actual value, then the actual value at that time was $198,324, and 6 per cent of that amount is $11,899.44, which is very close to the combined rental of $12,100 specified in the leases to Wertheimer. The lease to the taxpayer was at the rate of $8,500 a year after the months of April, May, and June, 1915, but Wertheimer reserved part of the property from which an annual rental of $6,920 was being received. Subtracting this amount from $12,100, the total he was obligated to pay under the leases, leaves a rental value of that portion covered by the Strand lease of $5,180, whereas the taxpayer was paying therefor $8,500, and in addition was required to construct a theatre.

Considerable importance is attached by the taxpayer to the rent of $9,000 which was paid on the Perry Theatre as evidencing the fact that its lease had such value. The assessed valuation of the Perry property was $89,400, as against $132,216 of the Strand property. The land covered by the Perry Theatre is 85 feet by 165 feet, while the land in the combined Selden and Jarecki properties is 62 feet 4 inches by 142 feet to 147 feet, but the Perry property contains a building assessed at $35,000. Considering assessed valuations to be two-thirds of actual value, the Perry property was worth in 1915 $134,100, a fair return on which at 6 per cent would be $8,046. It is thus apparent that the Perry rental is not materially disproportionate to the Strand rental, having due regard to the assessed valuations and the exclusions in the Strand lease and that the Perry lease covered a fully improved property.

In the light of all the evidence we are of the opinion that the Strand lease did not have any actual cash value when paid in for stock.

This brings us to the taxpayer's next contention, that it sold certain assets for $61,918.68 for which it should account in its tax returns, while the balance of the consideration of $160,000 was a purchase of the stock and should be accounted for by the stockholders. On September 12, 1919, certain stockholders of the taxpayer authorized English " to sell the capital stock of said company, whether common or preferred, which we own, on the basis of the offer to purchase said stock for $160,000." This offer to purchase did not go through. Further negotiations resulted in the contract of February 7, 1920, the provisions of which are determinative of the taxpayer's

contention. That contract provides that the taxpayer, for the consideration of $160,000, assigns to the vendee, James B. Clark, "the existing lease to the Strand Amusement Co. for the premises at 918 State Street, in the City of Erie, Erie County, Pa., together with the good will, theatre building, equipment, and all other property now belonging to the Strand Amusement Co. in the City of Erie," with certain exceptions not pertinent. The taxpayer emphasizes that provision of the contract which provides:

It is understood that the sum of Sixty-one Thousand Nine Hundred Eighteen and Sixty-eight Hundredths ($61,918.68) Dollars, being the book value of the theatre building and equipment shall be the consideration for the assignment of said lease of said theatre building and equipment, and the residue of the consideration, to-wit, Ninety-eight Thousand Eighty-one and Thirty-two Hundredths ($98,081.32) Dollars shall be the consideration for the good will and established trade of the Strand Theatre owned and operated by the Strand Amusement Company, and as represented by the capital stock of the Strand Amusement Company purchased by James B. Clark and assigned by him to the Strand Amusement Company for retirement in the liquidation of said company; that said sum of Ninety-eight Thousand Eighty-one and Thirty-two Hundredths ($98,081.32) Dollars shall be paid to the Vendor as agent for its stockholders and distributed among said stockholders from the proceeds of said notes.

The "good will" and "established trade," to which the $98,081.32 was allocated, were "owned and operated by the Strand Amusement Co.," and the consideration therefor belonged to the taxpayer just as much as that allocated to the theatre building and equipment. A corporation is not an agent for the distribution to its stockholders of all or any portion of the consideration for the sale of its own assets. There is no question in our minds that the contract was a sale of the taxpayer's assets for a consideration of $160,000, irrespective of any provisions prescribing a convenient means of liquidation and distribution of the corporate assets to its stockholders.

The taxpayer contends that the cost of the theatre should be amortized over a period of 20 years. The lease with Wertheimer was for 10 years, and provided for an option to renew for an additional 10-year period if he exercised the option to renew contained in his leases with the owners of the property. As the taxpayer's right to renew was conditioned upon the action of Wertheimer, we are of the opinion that the renewal privilege was too indefinite to warrant the taxpayer's amortizing the cost of the theatre over a 20-year period, and we therefore approve the determination of the Commissioner in spreading the cost over the original term of the lease. As the theatre was not commenced until about August 1, 1915, amortization of the cost thereof should not start until that date.